Case 125-75, Jared Fishman v. District of Columbia et al. Appellants, Ms. Pittman for the appellants, Mr. Gerstein for the appellate. Morning, counsel. Ms. Pittman, please proceed when you're ready. Good morning. May it please the court, Lucy Pittman on behalf of the District of Columbia and the officers, and I would like to reserve two minutes for rebuttal. The District Court erred here when it denied qualified immunity on Fishman's Fourth Amendment claims. The officer's conduct here, which was stopping Mr. Fishman and investigating suspicion of child abuse, was constitutional. But even if there is some question as to the constitutionality of that conduct, the officers would be entitled to qualified immunity because Mr. Fishman has not identified a controlling case or robust consensus of cases that put the fact pattern here into the clearly established prong required to defeat qualified immunity. Sorry. I'd like to begin with qualified immunity, but I'd also like to touch on the other issues. Can I ask a question just to start us off? Just this about jurisdiction, and there may be an obvious answer here, but there's definitely jurisdiction over the denial of qualified immunity because the denial of qualified immunity is immediately appealable, as an exception to the interlocutory review. And then where you started was you want a review of the denial of summary judgment as to many of the officers. Now as to that, apart from qualified immunity grounds, there's two jurisdictional questions I have. One is the denial of summary judgment as to every officer other than Officer Todaro as to whom summary judgment was granted. For the denial of summary judgment, those are usually non-final judgments as to which there's no interlocutory appeal. So that's one question. Sure. And then the second is under Rule 54B, Federal Rule of Civil Procedure 54B, if there's multiple claims in multiple parties, I think the way the rule works is that a final judgment is a final judgment as to all claims against all parties. And in order to get an appeal when there's only a judgment as to one party, here it would be Todaro, again, apart from qualified immunity. Then the district court has to certify that the requisites of the rule are met such that you can immediately appeal that one even though all claims against all parties haven't been decided. So at the end of the day, the question is, yes, we have jurisdiction over the denial of qualified immunity. Do we have jurisdiction over anything else? You do have jurisdiction over the denial of qualified immunity. I guess I just want to clarify that that involves all five officers, all five officers. Okay. And so then as to them, what we definitely have is their appeal from the denial of qualified immunity. What I want to know is do we have anything else as to anybody? So you also have, and I just want to make sure I'm clear because you mentioned the denial of summary judgment. I think embedded within the interlocutory appeal that is allowed for the denial of qualified immunity is that this court can then reverse the denial of summary judgment on behalf of the officers in order that the district court entered judgment on behalf of the officers on qualified immunity grounds. That's right. And that would be either prong the constitutional right now. So the last, the last part is just, I think the only other issue that's here is the common law claim and the common law claim. We've asserted in our brief that because it is intricately intertwined with the fourth amendment claims that this court can exercise jurisdiction. Putting aside the common law claims for a second. I mean, I think that also is subject to 54 B at one point at some point, but for if all we have before us is the denial of qualified immunity, that's one thing. And I, and I totally understand that one prong of qualified immunity gets to the merits of the constitutional issue, but the way your brief is teed up, it asks for reverse. It asks for reversal, send it back down, put aside to Dara for a second, send it back down, reverse the denial of qualified immunity and reverse it to the grant of summary denial. I'm sorry, let me, let me start over because I'm not being precise denial of summary judgment, reverse the denial of summary judgment as to several officers and send it back to direct the grant of summary judgment as to those officers that's okay on qualified immunity grounds. And yes, the constitutional question is embedded within qualified immunity, but that's different from saying even aside from qualified immunity, there should be a final summary judgment as to those officers. It has to be, I think it has to be on qualified immunity grounds. Either prong, but yes, it has to be on qualified immunity grounds, which is what we're arguing under the two fourth amendment claims, which is. But your whole brief is set up to say we should win under the constitution. And then even if we don't, we should win on a qualified immunity and then the whole thing is qualified immunity, right? So, I mean, just the way it's structured, I think it all is about qualified immunity. Then if we put that aside, there's the question of as to, to Darrow, can he appeal on any ground other than qualified immunity, given that there wasn't a final judgment as to all claims against all parties. Sure. So a couple of things. First, if the structure of the brief is confusing, I apologize for that. I think I was just thinking we start with the constitutional claim. That's the perverse prong of qualified immunity. And regularly we think of qualified immunity as falling under the clearly established, which is usually the easier prong to answer. So that's usually what's answered. And so that's probably where you get the bulk of, but that's what you meant then. Okay. Now I understand. Yes. So which, which is totally fine. So that the merits of the constitutional question, you're still viewing that as falling under qualified immunity. It's just the first prong. Sure. It's just that once you answer that, you don't even have to get to the second prong. But that is absolutely, we're still within the rubric of qualified immunity. Absolutely. And that's, so then you'd say the same thing as to Darrow. The only thing that's for us as to Darrow also is qualified immunity. That's right. Okay. That's right. And again, putting aside the common law issue that we've teed up that the court can, and I think the case law does support that the court can exercise jurisdiction on that because of how intertwined the things are, excuse me. And, and that, that works even if it's an interlocutory appeal under the qualified immunity because pen and appellate jurisdiction that can come along to an interlocutory, with an interlocutory APS. Yes. Yes. There's at least one, there's probably a couple of cases that we cite in our brief that were specifically in that procedural posture as being an interlocutory appeal on qualified immunity. And similarly, common law, false arrest, false imprisonment. Maybe it, maybe it was an excessive force depending upon what someone was moving under fourth amendment in those cases, but yes. And as to something that tags along with an interlocutory appeal with a tag along, like a state law claim with a tag along also have to be whatever's interlocutory appealable, as opposed to you can just bring along. I don't see a sort of a limitation on that, but it does have to be intertwined with what is, I think, before the court on the interlocutory appeal, which it is here. Okay. And so it's not really exceeding kind of any bounds there, I think. Okay. All right. So now that we've got the jurisdictional question, I think mapped out, at least for my purposes, then go ahead and. Okay. So I'll start with, I think, what is the second prong of qualified immunity, which is the clearly established, right? It's sort of undisputed here that there is no controlling case or robust consensus of cases where there was a fourth amendment violation under similar circumstances. Mr. Fishman largely concedes this by saying that he thinks this is one of those rare, obvious cases where the lawfulness of the officer's conduct is sufficiently clear without a precedent. But his argument is based on defining his right under the fourth amendment at too high a level of generality. And there's many Supreme Court cases that have said and warned that you were not to do that in fourth amendment analysis. I think Wesby stressed the need for precedent with similar facts because the fourth amendment is a fact intense inquiry. That by itself sort of the fourth amendment analysis here. That's where the court wanted to go without having a precedent with similar facts. The officers should have been granted qualified immunity. But even if the court wanted to address the constitutional claim, the first prong, as we argue in our brief, the stop here was reasonable. It was constitutionally sound. Investigatory stops are permitted when officers have reason to believe that there's been, they have suspicion of criminal activity. And here we have a 911 caller, an eyewitness to an incident. And her information is provided to the officers by dispatch that they saw a grown man grab a child and throw her into a car. That is more than sufficient to raise for a reasonable officer the question of whether or not that child had been harmed, had been abused, whether it be cruelly to children or assault, that there's reason to stop. Sounds like your argument today, like your brief, is relying entirely on this theory about child abuse. And maybe you did preserve that. But if you did, wouldn't it have been a much better use of everyone's time for you to file a reconsideration motion in the district court if, as you see it, you had clearly presented an argument and the district court simply ignored it? That's an option, but so was an interlocutory appeal an option. And here, I don't think there can be really any question that it is preserved. I can refer the court directly to Joint Appendix 308 and 309. And there, before the district court, it is abundantly clear that kidnapping was not the only offense that was at issue. I think the premise of Judge Garcia's question was that you did preserve it. And I guess the question is, even assuming that you did, if the district court just didn't treat with whether child abuse could be the predicate for the duration of the detention, then where are we? Because we're looking at something that the district court just didn't weigh in on at all. Sure. I mean, to be fair, the district court does have one statement in the order about the fact that he didn't think that the child looked harmed or injured. So perhaps that was his way of addressing that issue. I would argue that's insufficient. And yes, an option- It's pretty clear that the district court did not see this as an argument in the case, and it would certainly be unusual for us to address it in the first instance. So the next question was certainly going to be, if you're right that it's preserved, why should we do anything more than remand it back to the district court for it to do this analysis? Sure. Reconsideration is an option, but this court applies the exact same standard that the district court applies and does so without any deference to the district court. And so I understand remands where there might be deference to the district court, but that's unnecessary here. And there's significant case law about the fact that on summary judgment, this court is reviewing DeNovo and answering the exact same question for the district court. Well, I mean, it seems to me that you could think about it a couple of ways. One is, you argue that you'd be entitled to qualified immunity even if we take child abuse out of the mix, right? You think that the officers are all entitled to qualified immunity even as to kidnapping? That is not something we've put for- Even on the clearly established form. Maybe I misunderstood. I think you're saying, you're not asking for qualified immunity as to kidnapping, period. We're not. We took that out because we didn't want there to be a disputed fact before this court. And I think that it would be a disputed fact as to when reasonable suspicion for qualified immunity ended or not. Right. That's on the first prong. But on the second prong, there's an overlay, which is clearly established. And you're not arguing, it sounds like now, that even if reasonable suspicion dissipated as to when the detention had to stop, that it wasn't clearly established that reasonable suspicion dissipated. It isn't something I argued. And so for fairness, I don't want to raise it now, although I think that would be a fair ground. No, thank you for just setting out what you actually argued. So then I guess the question would be, are you arguing that even if the district court didn't address qualified immunity as, I'm sorry, didn't address child abuse in its resolution, that no matter what, the officers are entitled to qualified immunity as to child abuse? They would be. So in other words, what would be the point of sending it back to the district? Yes. Is that part of your argument or not? Certainly part of our argument is that sending this back to the district court, I think, would be unnecessary and probably not efficient. It's fully briefed here. It can be resolved here. And I do think that it is obvious that qualified immunity applies. As I said at the outset, the burden is on Mr. Fishman to identify a case. He has not identified a case at all. That's it. That's the game. So I don't think that it's as simple as that. Because yes, there's a lot of cases that say you don't do it at a high level of generality. You've got to do it with some specificity. Sure. And in a lot of situations, that means you need a case. But it's just not true if it's obvious that there's no longer any suspicion. You don't need a case that says, oh, there's no longer any suspicion on these particular facts. If there's just not suspicion any longer, there's just not. And that principle applies. Maybe there's not a case because it's so obvious that no case ever arises with the context, right? You could have that situation. And so that would be the question. I don't think it's open and shut just because you can't point to a case on the same facts. Sure. But here what we have is, I think, factual predicate that is just incorrect. The reason the officers don't have suspicion is because the kidnapping had dissipated. And no consideration of taking into account the child abuse. There doesn't seem to be any dispute that at the outset, the stop was lawful. So the question really is, why would reasonable suspicion have dissipated in this context in those 25 minutes prior to actually talking to- As to abuse you're talking about? As to the child abuse prior to actually- When did it? Did it ever? I don't believe that it did. So you think the detention could have continued even longer as to abuse? Yeah, I think that they could have investigated further. I think the officers rightly- What were they lacking at the end of the detention as to abuse? So I think what the officers determined was that this was better turned over to the Youth Division and Child and Family Services Agency because the investigation would have been, I think, it's not the kind of investigation you quickly do as a Terry stop. And so that's what they do at the end of this. You hear Lieutenant Loftus directing his officers to reach out to the Youth Division. That's the division that investigates child abuse with the Child and Family Services Agency. And there is reference in the complaint to the fact that the Youth Division about a month later resolved this and had this be unfounded. And the only reason you do such a report is if you still have reason to believe that there might be child abuse. That's the standard for making such a referral to the Child and Family Services Agency. And so while I don't think that reasonable suspicion ever dissipated completely, I think the officers felt comfortable stopping the Terry stop because I don't believe- because the child was at imminent danger, I think, at that moment and that they could refer it over to the professionals who actually look at child abuse regularly. So did the Terry stop have to child abuse? I don't think so, but it did. And so I don't know that the court has to answer that for sure it had to stop. Again, I think there were still some questions about what occurred in this incident. So then is your bottom line as to why we should rule on this, even though by your own estimation, the district court didn't take into account child abuse, that there would be no to remand it because no matter what, the officers are entitled to qualified immunity? Yes. That's the way you're perceiving of it? And given that the next step before the district court would be a trial, I think that would be a waste of both judicial resources, party resources, and jury time to have a trial when this is now- We don't know there would be a trial, right? Because if the district court didn't take into account child abuse and it were remanded for the district court to do that, then the district court might find qualified immunity. Fair enough. The district court might allow some additional briefing or if the court were to order that. But that would still be, I think, a duplication of the efforts that are already before this court. And this court is certainly empowered under the summary judgment standard to go ahead and rule on that now, given that it is fully briefed and before this court. I have one preservation question. So it strikes me as interesting, at least, to think about whether it's preserved as to Todaro. So just assume, try not to question the factual premise. It's preserved in the affirmative motion for summary judgment. That motion is filed months after Todaro's opposition. Assume that Todaro did not raise a child abuse argument. Why, in your view, or is it Todaro when arguably he forfeited by filing that opposition without raising? Sure. But he is one of the officers in the summary judgment briefing where it is raised, right? So it is raised before the district court on behalf of Officer Todaro. While not in the opposition, specifically in your hypothetical, I don't think that that matters, given that the district court has all of these filings before and is resolving these together. And it is an affirmative defense that he put forth in his motion for summary judgment. But I thought he did. He did say something about child abuse in his opposition, I thought. You thought he did say something? Well, I wasn't fighting the hypothetical. Yes, thank you. It certainly says something, not say nearly as much as the other motion does. That's right. That's right. And so I think between the two, if I am allowed to kind of change the facts of the hypothetical, I do think that between the two documents, it is preserved for Officer Todaro. Can I ask one question about Todaro, unless my colleagues are, because this is shifting just a little bit, which is, can you just help me in a case in which multiple officers are on a scene and one of them, summary judgment is sought as to one of them, presumably because of that person's testimony, that they had no reason to doubt the account of the, that they'd heard on the scene, which I can totally understand why they would seem to be distinct and therefore deserving of summary judgment being granted against them, unlike some of the other officers. Maybe I can understand the thinking behind that. But in order for there to be a judgment entered against that officer, does it matter whether that officer had independent authority to end the stop? I'm sorry, can you, can you repeat the last part? Yeah. So judgments entered against Todaro on the Fourth Amendment claim. And my question is, before the entry of judgment against Todaro on the Fourth Amendment claim, does it matter whether he had authority independently to end the stop? Because if he couldn't end the stop, then even if he reaches a conclusion, it wouldn't necessarily mean the stop ends. It would mean that maybe he would then say, hey, what are we doing here? And then he would have a conversation with his colleagues. And maybe somebody with authority to end the stop would then maybe do it, maybe not, because maybe that person has some other ideas. My only question is, did this ever come up? And how does this typically play out in this kind of context where there's multiple officers on a scene and there may be a question as to whether the person, if you single out one person, did they have independent authority to terminate the encounter? Sure. I don't believe on this record it came up at the district court. There is some discussion about it in the briefing about the fact that he had a pretty minor role in all of this. And I think that also kind of explains why at his deposition testimony he was explaining that while he didn't have reason to doubt what the girls were saying, he still had reasonable suspicion for kidnapping. And that makes sense. If you actually watch his body-worn camera footage, you'll see he had pretty limited information because he was not the investigating officer who was interviewing the mother or the children, and he wasn't interviewing Fishman. And so I think that all of that sort of supports that judgment against him is truly inappropriate here in this context, not just because of the subjective test that the district court applied when considering his Fourth Amendment claim, but also his role here. And we do include that in our briefing, that he had that limited role of more of a backup officer. You say he had a limited role, but I didn't understand you to be saying the reason the limited role matters is because he couldn't have done anything about the stop on his own. And maybe that's just... Sure. That may not be the right way to think about it. I mean, there's briefing elsewhere in here about whether you take into account everybody's collective judgment about suspicion, and maybe that also applies to collective authority to end the detention. I just don't know how this all plays out. I'm just asking you, do you know the law on this, how this plays out in terms of a circumstance in which one person may or may not have their own authority to end the encounter? I don't specifically know in this context, but if the court wanted me to... Okay. So I was turning to sort of the constitutional question on reasonable suspicion. A couple of points that I want to make on that, which is that that is the only constitutional challenge that I see that's still before the court. I don't see an arrest and probable causes being relevant anymore because in Mr. Fishman's brief, he doesn't make a challenge that the detention was necessarily too long and it converted into an arrest or that the use of handcuffs converted this to an arrest. So we are just talking about what is a very low standard, significantly less than preponderance of the evidence, whether or not the officers had reason to suspect that there was criminal activity. And I think that what dispatch reported to them was more than enough to meet that standard. We've touched on Officer Tutaro for a moment. I just want to quickly make sure that that is clear, that judgment against him on the Fourth Amendment claims Mr. Fishman is not defending the district court's subjective test. And rightly so, it is an objective standard. And that on the common law aspect of it, Mr. Fishman has conceded that it was error to enter judgment there because it was just supposed to be against the District of Columbia. So at minimum, everything for him should be reversed. And we think also the summary judgment should be reversed for the officers as well. Which brings me, unless the court has any questions on the Fourth Amendment to the common law claim, if the court reaches a constitutional question, that fully resolves the common law claim as well. If it is being decided on the second prong of qualified immunity, which is the clearly established prong, then the court would have to an additional question, which is a subjective good faith belief. And here I think that there's more than enough evidence on this record that the officers had a subjective good faith belief that what they were doing was lawful, that they believed that they had reasonable suspicion. They said so in their deposition testimony. Didn't some of them, and specifically Tutaro, say they had reasonable suspicion of kidnapping? Sure. Not of anything else? Sure. And he believed that that suspicion remained throughout. And we detail in our reply brief why that is reasonable for him. He was at the front... Point being, he did not testify. He had a subjective belief based on child abuse. That's correct. And so what I'm saying is if you take a look at sort of his involvement, this would be sort of the one kind of caveat on what I said earlier about kidnapping, is that it makes sense that he still has reasonable suspicion for kidnapping. He was on the front stoop at the beginning. He hears sort of the initial kind of statements from the older daughter that my dad didn't do anything wrong. He didn't take her. And then that's it. He's not there for any of the rest of the conversations with Ms. McCauley or the children. So he hasn't actually identified who these two adults are. He hasn't identified who these children are. And so obviously in that context, he hasn't ruled out kidnapping. And that is clear in his deposition testimony, that he believed that even if he was able to believe what the girls were saying, and he didn't have reason to think they were lying, he still had reasonable suspicion of kidnapping. And I would refer you to our reply brief where we kind of lay out in detail that timing. He has walked away from the stoop around 2.42 p.m. You're resting on your colloquy with the chief judge as to why we have jurisdiction on the common law. That is a stretch. I mean, that is not the usual course we take. It's not an appealable matter. And the first instinct for a number of us is you go back and do whatever you have to do. You're trying to draw nuances in a way that an appellate court normally doesn't do. That's an issue that was not battled out in the district court. And if there's something to be it seems to me the correct instinct as I read the law is it's not something we fool around with. You're straining in an area where we do not have jurisdiction typically, and you're trying to use a pendant notion to get it here, which is not favored. So not favored, right? There's no slur case law saying, oh, sure, we'll just take that up because it's here. There is that that would change the whole body of law that we hear in the D.C. That's not the way we do business. Sure. I understand that that is not the normal way in which this is done. And I fully acknowledge that this is sort of an exception. We cite cases in our briefing that put exactly sort of in this context the interlocutory appeal and a common law claim that is the exact same elements and same factual record. But if the court is not comfortable doing that, then obviously a remand on the common law claims would be required. My remand on something that's not here is the way I view it. That's the way I think about it as an appellate judge. It's not here. Sure. And maybe remand is not the right word. Maybe it's that you because it is it is a discretionary exercise of jurisdiction. It would be that you decline. My one caveat on that is that I would I would ask the court, given the concession that was made in Fishman's briefing, that this should not have been judgment against Officer Todaro on the common law claim, that if we could at least get that resolved based upon his concession, I think that that would be a great place to if this does have to go back to the district court to have it in that posture. There's no reason for the officers to be in a different context there. Can I just say one clarification on that? You have further on this jurisdictional question. You're asking me? You're the chief. No, I just want to make sure you don't have a follow up on the question. That's all because I was going to shift gears just a little bit, which is. So as I understood what you just said about Todaro, you're saying that he kept reasonable suspicion as to kidnapping for the duration of the stop. Yes. Then. But earlier, it's the one except it's the one that sort of exception is on the common law, not the Fourth Amendment claim. So did Todaro keep reasonable suspicion on the Fourth Amendment claim for the exception of the common law? It's because you have to have a subjective. It's a subjective standard as opposed to the objective standard. Under the objective standard, you look at what the officers knew and determine what and that would allow sort of the full the full range of what the officers knew. And so I don't think that we can walk away under the Fourth Amendment from what is learned by Officer Brady during his during his interviews with the mom and the children. So that's the only reason I'm sort of carving that out as being somewhat different there. But the court doesn't really have to go there either, because I think, again, the test under the common law, like under the Fourth Amendment for the false arrest would allow for errors of judgment. And so even if he is wrong on the kidnapping and doesn't identify child abuse, he does still believe that his conduct is lawful, even if he has identified the wrong crime. But that's only that only means he's that to continue detention as to kidnapping alone. Survives as to the state law claim as opposed to the federal claim. Is that the way you're seeing it? I think I see it as two options. I think I think it doesn't have to, but I think it can. Right. And it's just that subjective test because it's there. If the court wanted to look only at his testimony, which is what Fishman has put before the court on in opposition is just his testimony, then it's not it was not unreasonable and there was no bad faith by him. I think when you look at the totality of it, it is it is, I think, child abuse kind of throughout for all of the officers, but not kidnapping. That's right. Including as to clearly established. And for purposes of this appeal only, that's right. Okay. And I know I'm way over time. A little time for my colleagues. I'm sure there's questions. Yeah, one list. I want to make sure I'm understanding how you're framing. The disposal of the issue where you see the other side concedes the other offices are effectively not liable. Are you saying? We ought to take it on dependent jurisdiction and rule as a matter. Issuing a judgment on the merits. Are you saying it should be dismissed as on the common law claim as to the other officers? Well, they conceded. So, as I understand Mr Fishman's brief, and perhaps they'll correct me. Let's assume it's there. If it's wrong, he can argue it. Okay. I'm assuming I'm assuming they've effectively conceded. There isn't. There was a mistake made by the district court. That's right. And so he's in an appellate court now saying that was a mistake. Is that mood or are you framing it as if you want a judgment on that point? So, as to the officers, except to Daro on the common law claim, I don't think you need to have a judgment specifically. I think that he's effectively dismissed those claims. I would like to have that in an order that he's effectively. All I'm asking is a simple question. How are you framing that disposition from our vantage point? What is it that rewrite? That's not here because it's what? It's been dismissed, voluntarily dismissed by Mr. Fishman. I don't think that it's moot. I think that he has elected not to pursue those. Okay. Okay. I'll give you a little time for rebuttal. Thank you. Good morning, Mr. Chief Judge. May it please the court. I think this is about right. I'd like to begin with the facts below because I think this is crucial both to the issue of forfeiture and to the issue of qualified immunity on reasonable suspicion for any crime. Crucially lacking from the facts which are required to be presented in statements of undisputed material fact, which the court can find at joint appendix 291 to 96 and 229 to 37. Crucially lacking from this, any facts sufficient to give rise to any kind of reasonable belief that there was a serious risk of harm. I believe counsel was arguing towards the end of her presentation that the investigation needed to continue as to what she described as child abuse because this takes a while. It's not appropriate to settle in a Terry stop. It needs to be conducted by Child Protective Services. And I want to draw the court's attention to one crucial distinction. There's a difference between what we're calling in this court today, child abuse and the crime of second degree cruelty to children. It's obvious that the district of Columbia believed that it had suspicion sufficient to give rise to an investigation by the youth division of neglect or abuse from the family court system, which would result in interventions like parenting classes or God forbid separation of the children. The district correctly concluded that there was insufficient evidence that that was not grounded. But that's different than the question whether Mr. Fishman committed a crime and below in the statement of undisputed material facts, we see nothing but kidnapping, suspicion of kidnapping seven times at today's deposition. He concedes that he had reasonable suspicion of no other crime in his statement of material facts. He mentions no other crime in the other defendant statements of material fact, which are again at 229 to 37. We see the statement reasonable suspicion of kidnapping existed throughout the stop. But as you yourself pointed out, that's a legal conclusion. So what they need to have in the facts are the facts. And the facts statement does say, among other things, that it describes the call that 911 call and described someone throwing a child over their shoulder and then throwing them into a car. And there's. Widely varying interpretations of those words that someone could take. But why isn't one interpretation of those words pick up, throw into a car that officers ought to be inspecting a little bit more closely for harm to the child? So I think, again, considering the totality of the circumstances and again, the part of the confusion here is that this legal argument was not presented below, which is that those specific facts give rise to reasonable suspicion for crime. And I'd like to distinguish between two sort of categories of belief that an officer would have. There's the question presented by counsel in her presentation, whether an officer on the scene needs to be able to cite to something in a statute book and say, that's the crime that you committed. There's no question that that's not required. There's a different question, whether an officer in court represented by counsel in his briefing needs to present an explanation of what crime he thinks that the defendant committed. And here, although we say they copy out a recording of the 911 call, they don't allege that any of the officers heard it, which they did not. They don't allege how it was, or excuse me when I say alleged, they don't present facts to support that any of the officers heard it. They don't present facts of what exactly it is they heard about that call. And all of them testified that they were believed that they were there to investigate a kidnapping. Tadaro conceded that he wasn't there to investigate nothing else. Tadaro similarly conceded that at the moment he arrived, he subjectively knew, as any officer would, that the two children there were Fishman's, the woman was their mother, and that Fishman had not concealed them from their mother because the door was open and they both arrived, called him daddy. She called him daddy to them. One of them said he did not. If we could, what I view as sort of the strongest preservation on their argument, on their side, has little to do with the statement of undisputed facts and more about the argument in their motion for summary judgment, which on JA-308 talks for an entire page about kidnapping not being the only crime, and then it does refer to child abuse, but then the next page cites the statute on cruelty to children. And the strong version of their argument might be that's clearly preserving the legal argument in the motion, and then there might be a separate argument about whether the statement of facts was sufficient to support that, which, as I think some of the questions suggest, is not the kind of thing that we typically rifle through in the first instance, and that just focusing on this, it's hard to say it's forfeited, this entire theory about child abuse. So can you respond to this, specifically respond to JA-308 and 309, and why that doesn't preserve the argument? And I think, as I hope we made clear in our briefing, that is because of the lack of factual support for those allegations. I remained puzzled rifling through the briefing, both on appeal and below, as to what specific facts they contend support reasonable suspicion of the crime of second-degree cruelty to children or assault. And to go to the Chief Judge's question to my friend on the other side, I don't believe below anyone contended that the following act gives rise to any kind of reasonable suspicion of a crime. Taking one's own child who is on the street uncontrolled, putting the child over one's shoulder, and putting the child in a car. That, I think we all concede, or my colleague concedes, is not a crime, and that the officers didn't believe it to be a crime, would not reasonably have believed it to be a crime, and qualified immunity would not protect their conclusion that it was a crime. And so below what we lacked, and to Judge Garcia's question, I think what was lacking in that presentation on page 308 and 309 of the Joint Appendix, is the connection to facts. Rule 7H, as this Court says time and again, does not require the District Court to be as then-Chief Judge Tatel put it, like a truffle pig, looking through the records for facts in support of a legal argument, saying merely, well, they could have suspected these other crimes, but not saying what it was that they suspected them for, and what facts supported that is insufficient to preserve the argument for this Court. And that's the argument we're attempting to make in our brief. But at a higher level of generality, all of the officers testified to, and particularly to Darrow, that they received a call for kidnapping, and the alleged fact pattern of the kidnapping, again, we don't have exact what detail from the 911 call makes it into the officers' minds, and that is, I think, crucially important for this Court's consideration. But even assuming that call comes through, we have a call that calls the 911 operator to ask, that's it, effectively? There's not much we can do with that. And to say, okay, well, we'll send somebody out for kidnapping. The call goes out for kidnapping. And at least as to Darrow, and I think Darrow, at the very least, be a factual dispute as to the other officers, he knows the family relationship between all of the parties, and he knows that there's no reasonable suspicion of kidnapping, which, helpfully, my colleague concedes, there was not reasonable suspicion for kidnapping dissipated. And the only argument on appeal now is that other crimes may have supported reasonable suspicion for the continued detention. Did the Chief Judge have a question? I'm sorry. No. Briefly, as to the common law claim, we did not contest that the Court could, if it wanted to, exercise discretionary jurisdiction over that claim. And we did indeed concede below that we dismissed the claims as to the individual officers under D.C. law. Under the D.C. Tort Claims Act, they're immune from those claims, and the District stands as respondeat superior for them. And so we did indeed concede that. I don't take a position here whether the Court should exercise discretionary jurisdiction, but we didn't oppose it. And just to clarify the point in our brief, that counsel contends violates the cross-appeal rule. Nearly the point that we were trying to make is, given that the facts on this claim were undisputed below, the conclusion that judgment should issue against the District, it should not issue against Todaro, but the District, because of the error in who the party is, this Court could just indicate that, but does not need to issue a judgment as to it. Can I ask you about the cruelty to children idea? So, that is a crime. And if what the officers have is a report that somebody threw a child into a car, is there reasonable suspicion of cruelty to children? Given that bare factual allegation, no, Your Honor, because, again, in any common usage, I don't think anyone uses the term throw a child in a car to mean detach the child from your hand into the air or into the car. The understanding here in this 9-1-1 call was Mr. Fishman put his child in the car. It seems to me that the very fact that somebody would take the time to call, I mean, I think you're right that a lot of, colloquially, a lot of times, I mean, parents would describe their own conduct as to their kids as saying, I had to throw you in the car, or they'd tell somebody else without even contemplating that with abuse. But the fact that somebody makes a call and says, hey, I just saw somebody throw a kid into a car, I mean, you've got to assume that that's not happening every time they see somebody take their child and put them in a car. Perhaps. But also, that caller thought that she had witnessed a kidnapping, which she had not, right? As soon as that was, and we conceded that reasonable suspicion existed to stop Mr. Fishman for kidnapping at the beginning of this interaction, right? As Officer Yeager comes up to find out. Right. So the caller saw just a bunch of stuff that raised enough of a suspicion that they felt like they needed to make a call, which is something. And yes, some of it was kidnapping, but some of it also was the nature of the way in which the person, the child was put in the car. And the question becomes, suppose this happens. Suppose that a caller calls the emergency line and says, I just saw a dad throw their kid into a car in a way that no dad should throw a kid. It was just beyond anything I've seen. Would that be reasonable suspicion of cruelty? Yes, I think so, on those facts. And again, that's crucially distinguished from the facts that we have here, which is a 911 caller, at least as presented to the officers. And again, this I do think is a crucial distinction. The officers arrived to respond to a call for kidnapping. And this court should consider, and the court below considered, what they knew at the time, the facts that they knew at the time. And that, to Judge Garcia's earlier question, is why I'm so focused on the statement of material facts. This court is meant to assess what they knew as a factual matter at the time that they continued to tame Mr. Fishman for 25 minutes. And there's no evidence of anything like that. They got a call for kidnapping. The radio runs as kidnapping unknown, and that's to distinguish it from kidnapping parental, which is a noncustodial parent. It's also included in the statement of material facts are citations to the page of Yeager's deposition testimony, which, again, is not a transcript. But he does say, when I was dispatched, I was told that a child was thrown into a car. Right? And that's the whole basis of their argument. Maybe it's sufficient. Maybe it's not. But to say it's not in the statement of facts. That is to Yeager's belief, yes. Tadaro testified that he, this is at page 231. I don't think he did. At 231, he testified, or at 231, he is reported as saying to, if I've got this page wrong, I'm very sorry. But at 231, he is reported as saying to McCauley, we got a call that a guy put a kid in a car. I thought the caller said, I don't know if it was an abduction or a father manhandling his child in a really bad way. That's not just kidnapping. And that call was not presented to the officers. And what the officers received was a call for kidnapping. That call happened. You're just saying it's only the lieutenant that heard that. Correct. And there's no, if the first time we see any allocation that Lieutenant Loftus remained in command of the scene or was in command of the scene at all, such that his is imputed to the officers, is in the appellant's reply brief. Below, there's no evidence that Lieutenant Loftus was in command of the scene. He made one phone call to the scene, the scene at Fishman's House. He was on Wisconsin Avenue. He made one call in which he asked for information. He quickly received a little bit saying that there was a suspect in handcuffs. And then he hung up the phone and drove to Fishman's House. There's no other evidence that he was in command. And so I think the appellant's portrayed as uncontroversial that collective knowledge can be imputed from a commander to a non-commanding officer, which is true. There's just no evidence that that was the case here. So putting aside Loftus for a second, because he got the extra information that the caller thought, even if it wasn't a kidnapping, it was still conduct as by a parent that raises serious questions. But for Jager, who knew that there was a suspect, if Tadaro were thought to have been aware of that characterization, then what is your argument about reasonable suspicion vis-a-vis Tadaro? Again, I think we're lacking from any of these allegations serious risk of harm as is required by District of Columbia law. That might raise reasonable suspicion for purposes of a family investigation, which is exactly what took place after the Terry stopped. But again, absent from any of these allegations is the kind of detail about serious risk of harm. We have simply, I got a call that a guy threw a kid in a car. And I think that standing alone, it would be a remarkable proposition to say that that is a crime for one to do to one's own parent. And I think the chief judge's question about a hypothetical call in which someone said, a dad threw a kid in a car in a way that a dad never should, which is clearly wrong, is distinguished from that bare information that was given to Jager. So a report of a dad throwing a kid in a car, we'll just stipulate it as a dad, dad throwing a kid in a car and a person making a 911 call about it isn't enough in your mind to raise reasonable suspicion of a crime? I think on those bare facts, yes, with one crucial distinction that I think here, just to make sure I'm understanding the question correctly, here, the call was for kidnap. I understand that. Yeah, I do. And so there is usually associated with a call and accusation. Right. And again, it doesn't need to be a statutory accusation. But we're imagining a call in which someone just barely calls, picks up the phone, says 911, what did you just see? Says, I saw a dad throw a kid in a car. I don't think that states a claim for reasonable suspicion. I didn't see any argument to that below. All of the citations to cases about the crime of second degree cruelty to children and assault as committed by a parent against a child were vastly distinguishable from that circumstance, as we point out in our brief. My colleagues don't have additional questions. No further questions. Thank you, Your Honor. Thank you, counsel. Ms. Piven, we'll give you the two minutes you asked for for rebuttal. Thank you. And I'll be quick, just a couple of quick points. I want to start with, it is clear that dispatch reported kidnapping and that a child had been grabbed, thrown over a shoulder, and thrown into the car. That is from Officer Yeager, as well as Todaro. He heard that as well, the throw into the car. And what you heard from counsel was that throwing a child into the car, he doesn't believe that that's enough for reasonable suspicion. I disagree. But this is where the second-pronged qualified immunity comes in. Where is the case that says that officers do not have reasonable suspicion of child cruelty in that circumstance, or any circumstance similar to that? Instead, what I heard more was kind of an adjudication of guilt. Reasonable suspicion is significantly lower than that. And we also have the information that Lieutenant Loftus has. He got much more damning information from the 911 caller. And contrary to what counsel said, that was raised below. He was referred to as a senior officer who was in charge in the briefing below. And he was clearly in charge here. We see that around 3.05 p.m., when he is the one who stops, stop. Yeah, but what is it that you think we should look to, to buy your argument that the officers were acting on suspicion of more than just kidnapping? Sure. I think you can take a look directly at the body-worn camera footage, where the officers themselves say kind of throughout the 25 minutes that their goal is to talk to the younger child, because they need to see if she was harmed. And you hear Lieutenant Loftus say that when he arrives at O Street, saying the stop continues. And in fact, he also didn't discontinue the stop when he called to O Street. You hear Sergeant Bray say that. And you hear Officer Brady say that repeatedly, that they all knew that this, because the call had been throwing a child into the car, and that's something Officer Bray says explicitly to Mr. Fishman right around 3.02 to 3.05 p.m., that that is why they needed to make sure they spoke to that younger daughter, who was the alleged victim. Is what you just said in the statement of material facts? That they needed to talk, I would have to double check. I don't recall that specifically. Basically, the whole narrative, any facts supporting the idea that they were there on reasonable suspicion of something other than kidnapping. Certainly, the facts laid out below did include that they needed to talk to the child. I don't know if it's so clear as to saying that it was for child abuse specifically, beyond what's said at JA 308 and 309, as you pointed out. But I don't think that that matters, right? The facts here are not under dispute that this is how the stop transpired with Lieutenant Loftus making sure that the child had spoken to, although Officer Brady also knew that that was his goal here. Who was it? Somebody asked whether when speaking to the younger child, whether it was gentle. Am I remembering right? Whether the toss was... So, Officer Brady, when he was speaking to the child, and that's at the very end of the stop, he asks a number of questions to try to get to how did your dad put you into the car? Because what we heard from counsel was that somehow the call was that he was placed or she was placed into the car. That wasn't what it was. It was thrown into the car. So, he's exploring with the child what that means, as well as kind of how did he grab her? I think there's reference to, was it a bear hug? I think we're all kind of accustomed to seeing that sometimes when a child is out of control. And also, just was she okay? So, that's where we get to sort of the elements of cruelty to children and assault. But to go back to the point I was trying to make, which was what's key here is there is no case that puts what the officers did here when there's a report of a child being thrown into the car as being clearly established as being a violation of the Fourth Amendment. And I think that that really is the game here. There is plenty of case law explaining reasonable suspicion and what you need to be able to hold someone for 25 minutes. Sure. And what we heard. I mean, the notion that the Supreme Court is meant to say, I realize the rules are stricter, but it's meant to say that if you can't find the exact case, that's the end of the discussion. That's not correct. Well, I think Wesby stressed pretty strongly that a case is required for most cases. It is only the rare case that it isn't required. And I will point out, you've heard from counsel that had the call or had, you know, the officers been told that the child had been manhandled in a bad way and thrown into the car, that that would have been enough for reasonable suspicion. Well, that's exactly what Lieutenant Loftus was told by the 911 caller. So that's also, that sort of concedes the constitutional point before we even get to the second prong. And so I think on this record, it's sort of unquestionable. There was reasonable suspicion throughout. But even if there was not, there is no clearly established precedent that would have told the officers that maintaining the stop long enough to talk to the younger child to verify that she was okay is constitutional, or certainly is not clearly established as being unconstitutional. My last point I want to make is that, you know, there's been some discussion of various forfeiture things here and whether or not the court should resolve this. I encourage the court to resolve the Fourth Amendment claims. It is fully briefed here. I don't believe that there is a forfeiture, as Judge Garcia pointed out. These things were raised in the briefing below. And I think that it would be pretty inefficient to send this back to the district court on the Fourth Amendment claims. With that, unless there's additional questions, I ask that the court reverse the district court. Let me just, I want to probe one little point with you. Suppose the situation was police officer parked on the street or standing on the street somewhere and the father is driving, daughter's in the back of the car. And as they get near the officer, the little girl opens the window and screams out, and she's crying, screams out, I'm being kidnapped. Can the officer stop, handcuff, and hold him for 25 minutes once he finds out the relationship, father, daughter, on that? So I'm going to put aside the 25 minutes just for a moment. Absolutely, I believe that hearing a child scream, I've been kidnapped, would warrant officers to stop. And I think everyone- On child abuse. I think to stop on kidnapping. And maybe I need to declare- And let's say this is a father who had all the materials right there. All the court papers, this is my daughter, officer. Here's the picture. Here's the family picture. Here's the registration. It's my daughter. Now the officer can proceed. Well, there could be some child abuse here because of what? What are you saying about that? On that particular fact pattern, you don't have, I think, a specific allegation that would warrant further investigation into child abuse. Here we absolutely do.  But here we absolutely do. Here we have a 911 caller who's presenting this in the alternative, kidnapping or child abuse.  I mean, you have someone calling anonymously saying it's kidnapping, so you can get that out of the way even faster. Here, you're looking at the situation. I'm not understanding your suggestion that unless I can find a precise case on point- It doesn't have to be precise. I want to make this- It absolutely does not have to be a precise case on point. But there needs to be a case. My hypothetical, once the father within five seconds makes it clear, this is my daughter and there's nothing else, that that can be turned into reasonable suspicion for child abuse. That you think it can be?  No, no. What I'm saying is- Because she yelled out the window? No, you said, yes, it could be. No, I said that it would be- You could stop for kidnapping. I don't think that's child abuse. I didn't hear a fact. It can't be turned. Okay. But that's what's different here. We have a 911 caller who has presented this in the alternative. It's kidnapping or child abuse. Or? Or. You should say that. The 911 caller makes it abundantly clear. If he's the father and it's not kidnapping, then it's child abuse. No, the officers have the facts. The officers have the facts that a child was thrown into a car. That's different. Had the child who yelled out the window in your hypothetical, yelled out the window, my father threw me- Or, no, I'm sorry. He threw me into the car. I'm being kidnapped. I think once learning that it's the father alone, they are perfectly within their right to ask additional questions to see if this child had been harmed because of the violence of throwing. And I think that that's what we would expect. I think it would be really bad police work if they get a hotline or they get a 911 call that a child has been thrown into the car and they walk away without exploring what that means and was this child harmed. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Garcia; Edwards